IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                    ) | Case No. 1:20-cr-00050 |
| ) | |
| KATHLEEN D. LITTLEFORD ) | |

### SENTENCING MEMORANDUM ON BEHALF OF DEFENDANT KATHLEEN D. LITTLEFORD

Through counsel, defendant Kathleen D. Littleford, files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

### INTRODUCTION

On January 14, 2021, Kathleen D. Littleford pled guilty to one count of a one-count Information charging her with Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1349 and 1344.  ECF No. 2 and Presentence Investigation Report ("PSR") ¶ 2.  Her total offense level was computed to be 14.  PSR ¶ 58.  She has no criminal history. PSR ¶¶ 60, 61. Therefore, her total criminal history score is zero which establishes a criminal history category of I.  PSR ¶ 63.  The guideline imprisonment range for a total offense level of 14 and a criminal history category of I is 15 months to 21 months.  PSR ¶ 88. The Government does not oppose a sentence of probation.

For the reasons stated below, we believe the guideline range yields a sentence that is greater than necessary to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

## FACTS

The unfortunate events which gave rise to these charges began in 2018. In 2018, Kathleen D. Littleford, a 76-year-old widow, was contacted by a man representing himself to be Frank Peterson.  They began an online relationship that turned into an amorous relationship involving frequent messaging and telephone calls. Frank Peterson led Ms. Littleford to believe that he was wealthy, that he would marry her, pay her bills, and take care of her for the rest of her life, including buying her a Rolls Royce.  However, Frank Peterson said he had a problem: His money was encumbered by the IRS for back taxes. He needed Ms. Littleford to receive funds and then send them to him to get around the IRS liens.

Spurred on by Peterson's promises to take care of her, Ms. Littleford began helping Peterson with his fraudulent requests.  She signed other people's names (Lizbeth Lawry, Salome T. Musch) to counterfeit checks provided to her by Peterson and deposited the funds into her account. She received wire transfers from individuals she did not know (Nancy McCadden, Washington State Employment Commission, Alicia Wanek, ETORO, Simple BBVA Bank) but accepted them anyway because Peterson told her to do so.

Ms. Littleford then sent substantially all the money to individuals as she was instructed to by Peterson. This continued until Mrs. Littleford had received and transferred to Peterson funds totaling $190,000.00. [1] [2]

### Kathleen D. Littleford

Kathleen D. Littleford was born in Brooklyn, New York on March 22, 1944. In 1964 she married Stanley Page Littleford and together they had two sons. Her husband passed away in 2012. She is now 76 years old. She has lived in the Bristol area her entire life, has no prior criminal history and has never been in trouble.

In 1989 she attended Virginia Highlands Community College in Abingdon Va. and obtained the required education to obtain her real estate license. PSR 78. She has been employed as a real estate broker continuously since 1989. PSR ¶¶ 81-84. Since July 2016, she has been employed as a real estate agent with Heritage Homes in Bristol, TN. PSR ¶ 81. She is a licensed real estate broker in Virginia and Tennessee.

She is well respected in her community as evidenced by the many influential people who have written letters on her behalf. Kathy has life-long friends whose names read like a Who's Who of Bristol. They come from various walks of life and

---

[1] In June 2020, Ms. Littleford used a debit card to make personal purchases at Food City and Dollar General in an amount probably not exceeding $50.00. *See* Information (ECF No. 2) and PSR ¶ 39.

[2] These facts are derived from the Information ECF No. No. 2.

in their own words report how out of character the actions that gave rise to these charges are. Her friends have written letters to this court which are summarized below:

Amelia Jarrard is a life-long Bristolian who has known Kathy Littleford for over 30 years. They met through their volunteer work with Junior League. Later they were both real estate agents who worked together at Landmark Realty from 1989-1992 and again for Coldwell Banker from 1994-2011.  Ms. Jarrard reported that "[A]ll of this time, I saw Kathy as honest and fair, trustworthy and dependable. She was personable and friendly and a pleasure to work with."  *See* Exhibit A.

Joan Tickle Guest is another life-long Bristolian who has known Kathy for over 40 years. They worked together in various volunteer organizations including the Blue Ridge Garden Club and the Junior League of Bristol.  She is "dismayed that she has fallen in this trap like so many other lonely widows looking for companionship and love through the internet."  *See* Exhibit B.

Ellen K. Reynolds is a former Vice-President with Wells Fargo Bank having worked there for 35 years. She has been friends with Kathy for forty-seven years and was her neighbor in Bristol for many of those years. Ms. Reynolds knows Kathy as a dedicated family member who raised two sons, cared for her own mother until her death and her husband during a three-year bout with cancer until his death.  *See* Exhibit C.

Mary Beth Rainero is well known in the City of Bristol and a long-time supporter of the arts. She has known Kathleen for over 50 years and their families attended church together. Ms. Rainero has known Kathy as a loving wife, a devoted mother and loving grandmother. Despite being a busy mom, real estate agent and wife, she found time to give back and volunteer in the community. In her words: "It was very hard on me and others that know her, and have known her, that she would have become involved in anything that would compromise her integrity… it just doesn't fit. I am frankly at a loss to comprehend how this might have happened. She must have been terribly lonely." *See* Exhibit D.

Johnnie Strader is another life-long Bristolian who worked for many years as a psychologist at Bristol Regional Mental Health Center. She has known Kathy since their childhood. They have been friends for their entire lives, interacted socially and worked together on committees for charitable causes. Ms. Strader chose Kathy to be their realtor when they sold their home. *See* Exhibit E.

Joyce Tickle Oakley has known Kathy for over 45 years. They worked together in the Border Guild/Junior League and the Blue Ridge Garden Club. When Kathy worked at the Bristol Chamber of Commerce, Kathy was assigned to serve as administrative assistant to her husband, Sid Oakley who was the chair of the Bristol's First With Me Community Pride Campaign in 1987. Joyce wrote: "When I read of her pending difficulties in the Bristol herald Courier, I immediately thought of the

5

loneliness and depression she's mentioned to me since Stan's (her husband's) death, how she longed for a close personal relationship and how all that might make her easy prey for someone who may be inclined take advantage of her. Her recent problems are so unlike the kind lady, mother, grandmother and friend I've known all these years." *See* Exhibit F.

Chris Miles Jones has taught political science in High School and college. She has worked with Kathy in the junior League of Bristol. She writes that Kathy "is a respected member of this community known for her success as a businesswoman and contributions to local organizations such as the Junior League of Bristol and the Bristol Ballet." *See* Exhibit G.

Ann G. Woods is another educator. In 1995 she became the director of the National League of Cotillions and eventually owned eight franchises in Southwest Virginia and Northeast Tennessee Her goal through Cotillion was to "help young people become persons of noble character." Ms. Woods has known Kathy for over forty years. Ms. Woods has lent her money and was always repaid, she has witnessed Kathy as a devoted wife, mother, grandmother, aunt, and sister. They worked together as member of the Junior League of Bristol where Kathy was often chairman of many committees. *See* Exhibit H.

Andrew Kristofek, II is retired from the Bristol Virginia Police Department where he was Captain of the Criminal investigations Division. He is a graduate of

the FBI Academy and the Virginia Forensic Science Academy. He has known Kathy for 36 years and states he finds the matter before the court "greatly out of character for her." He notes her as "a wonderful neighbor" and a person "who would always help you in any way she could if asked" and that she is a "wonderful, loving, family-oriented woman, who I would trust with anything I own." *See* Exhibit I.

Nancy Baker DeFriece is a "Bristol Virginia-Tennessee native, a Businesswoman, an Advocate for the Arts. She describes Kathy as "an individual who loves and appreciated her Family and Friends." She has known Kathy for fifty years. When their children were young, they worked together for two days a week in a childcare program. Later they were both active members in the Junior League. Nancy DeFriece started a well-known real estate company that did business as Landmark Realty. In 1989 Kathy worked for her as an agent. Ms. DeFriece reports that Kathy "was one of the finest agents that she ever had." During the three years that Kathy was with her company she had a key to the office building and said, "there was never any hesitation to her having a key as I know her only to be honorable, dependable, and respectful." *See* Exhibit J.

Jean S. Slack is another, except for one-year, lifelong resident of Bristol. Before retiring, she worked at United Telephone System, SmithKline Beecham, first Class Travel and Oakley Cook Funeral Home. Like many others, she has known Kathleen for over 35 years and has "always known her to be kind, caring and

7

responsible." Within the past 15 years they have been members of an area women's garden club and reports Kathy as an active and responsible member of the organization for many years.  *See* Exhibit K.

Gary M. Shell is a former Virginia State Police Trooper Pilot with the Med Flight program. He and his wife lived next door to Kathy. Kathy and her family were the first ones to welcome them to the neighborhood. They were neighbors for more than 30 years and became good friends. They would even entrust Kathy to watch their home when they were out of town. Mr. Shell and his wife have "always found Kathy to be honest, trustworthy and a woman of integrity."  *See* Exhibit L.

## ARGUMENT

Although Ms. Littleford has broken the law and accepted responsibility for her actions, she was the unfortunate victim of a scam. Due possibility to her age and being a widow, she was preyed upon by a man promising her security. She gained almost nothing from her involvement in his affairs. The guidelines compute a loss that greatly exceeds her personal gain.

Under Application Note 3(A) of U.S.S.G. § 3B1.2, a defendant who is accountable for a loss amount that greatly exceeds the defendant's personal gain from a fraud offense may receive an adjustment under these guidelines.  Here, except for one use of a debit card to make small purchases at Food City and Dollar General in June 2020 (ECF No. 2 and PSR ¶ 39), the defendant received little personal gain

(probably less than $50.00) relative to the loss amount.

If the loss were $6,500.00 or less, which is more than 10 times the amount of the defendant's personal gain, the base offense level would be 7. U.S.S.G. 2B1.1(a). Deducting 2 points for acceptance of responsibility (U.S.S.G 3E1.1), her total offense level would be 5. A total offense level of 5 with a criminal history category of 1 yields a sentence of 0-6 months. This adjustment would render probation within the guidelines and is consistent with the government's agreement not to oppose probation.

It is difficult to measure the significance age may have played in part in the defendant's actions. What we do know is that she has no criminal history and lives alone. It is not unreasonable to infer that a 76-year widow living alone is vulnerable to predators. Her friends have independently commented on the loneliness that she felt. The guidelines provide that age may be relevant in determining whether a departure is warranted if age individually or in combination with other offender characteristics are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. U.S.S.G. § 5H1.1. The combination of the defendant's age, her status as widow, living alone with no prior criminal history distinguish this case from typical cases covered by the Guidelines. There are other forms of punishment such as supervised release or house confinement that would be

equally efficient and less costly than incarceration, especially during the Covid-19 pandemic.

In addition to the grounds stated above, the defendant moves this Court to grant a variance outside the guideline range based on a consideration of the factors set forth in 18 U.S.C. § 3553(a), to-wit:

    (a)    Defendant's criminal history.  The defendant is 76 years of age and has no other criminal history.

    (b)    Characteristics of the defendant. The defendant is an older American, is widowed and lives alone and is especially vulnerable to a being scammed by a predator, which is what happened here.

    (c)    Need to protect the public from further crime.  It is reasonable to infer that there is no risk that the defendant will commit further crimes since she has no criminal history.

    (d)    The kinds of sentences that are available.  The public would be protected by a term of supervised release for the defendant.  This would allow the defendant to continue to reside in and protect her home.

    (e)    It is noted that the government does not object to a sentence of probation.  Plea Agreement, ¶ 2 (ECF No. 3).

## **CONCLUSION**

Considering the advanced age of the defendant, her lack of criminal history, no substantial personal gain from her actions, and a lifetime of community support, we submit that there are grounds for a sentence below the guideline range.

We request that the Court not impose a period of incarceration for defendant Kathleen D. Littleford and sentence her to supervised release or probation.

                                            KATHLEEN D. LITTLEFORD
                                            - by counsel -

/s/Daniel R. Bieger
Daniel R. Bieger, Esq.
VSB No. 18456
DAN BIEGER, PLC
565 Volunteer Parkway
Bristol, TN  37620
(423) 573-4440
(423) 573-4443 - fax
dan@biegerlaw.com
*Counsel for Defendant*

11

## **CERTIFICATE OF SERVICE**

I, Daniel R. Bieger, Esq., do hereby certify that on the 23rd day of March 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Duty Assistant Abingdon
United States Attorney's Office - Abingdon
180 West Main Street, Suite B19
Abingdon, VA 24210
USAVAW.ECFAbingdon@usdoj.gov

Daniel John Murphy
Assistant U.S. Attorney
United States Attorney's Office
Western District of Virginia
310 Cummings Street
Abingdon, VA 24210
usavaw.ecfabingdon@usdoj.gov; teresa.brown3@usdoj.gov; caseview.ecf@usdoj.gov; daniel.murphy@usdoj.gov

/s/Daniel R. Bieger, Esq.